UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

LIAONING CHENG DA JOYLAND CO.,
LTD., f/k/a LIAONING CHENGDA
ENTERPRISES, CO. LTD.,                                         Case No. 08-CV-4604

       Plaintiff,

  -against-                                                            **ANSWER &**
                                                                                                 **COUNTERCLAIMS**

ALSTON TAYLOR USA, INC., CHINA RED
USA, AND ALSTON TAYLOR USA INC.
D/B/A CHINARED USA,                                            **DEMAND FOR JURY TRIAL**

       Defendants.
_____X

      Defendants ALSTON TAYLOR USA, INC., CHINA REDUSA, AND ALSTON TAYLOR USA INC.D/B/A CHINARED USA, 150 (hereinafter 'Defendants") by and through their attorneys Wong Wong & Associates, P.C., answering Plaintiff's Complaint by way of Answer and Counterclaims, allege upon information and belief as follows:

1.     Admit the allegations contained in Paragraphs 3, 6 of the complaint.

2.     Deny the allegations contained in Paragraphs 8, 9, 10, 13, 14, 15, 16, 19, 20, 21, 22 of the complaint.

3.     Deny having information or knowledge sufficient to form a basis as to the truth of the allegations contained in Paragraphs 1, 2, 16 of the complaint.

4.     Deny the allegations in Paragraph 4, except that Defendants do business in New York, New York.

5.     Deny the allegations in Paragraph 5, as to the date of when Plaintiff and Defendant began to work together.

6.     Deny the allegations in Paragraph 7, except that the merchandise was shipped to New

York on or about July 23, 2003.

7.     Admit allegations in paragraph 11, except that Defendants are not liable to Plaintiff for any amount.

8.     Admit allegations in paragraph 18, except that the relationship started in 2000.

9.     The allegations contained in paragraphs 12, 17 constitute conclusions of law as to which no responsive pleading is required and which are deemed to be denied.

### AFFIRMATIVE DEFENSES

10.    As for Defendant's **First Affirmative Defense**, The Complaint fails to state a claim against the Defendant upon which relief may be granted.

11.    As for Defendant's **Second Affirmative Defense**, Plaintiff lacks standing to pursue its claims against Defendants because there is no amount in controversy.  In or about May 2003, Defendants brokered a deal between Plaintiff and SWAK, LLC that is the subject of the contract alleged in the complaint.  However, SWAK, LLC became insolvent, filed for Chapter 11 Bankruptcy, and did not pay for the contract.  In or around early 2004, Plaintiff and Defendant agreed that Plaintiff would receive a reduced payment for the contract alleged in the complaint from SWAK's bankruptcy distribution.  Defendants joined the bankruptcy action as creditors, and when Defendants received distribution checks from SWAK'S bankruptcy, Defendants would then wire Plaintiff its share.  The final payment to Plaintiff came in 2007 and Plaintiff was paid in full for the contract alleged in the complaint.  Plaintiff never sent notice to Defendants of any objection it had to the agreement, despite constant contact and updates between the parties, and Plaintiff never sent Defendants an invoice for the contract alleged in the complaint during the 3.5 years during the period of SWAK'S

Bankruptcy litigation.

12.     As for Defendant's **Third Affirmative Defense**, Plaintiff has been paid in full accord and satisfaction for all the alleged claims in its complaint.

13.     As for Defendant's **Fourth Affirmative Defense**, Plaintiff's claims are barred by the doctrine of laches and delay.

14.     As for Defendant's **Fifth Affirmative Defense**, Plaintiff's claims are barred by the doctrines of waiver, estoppel and unclean hands.

15.     As for Defendant's **Sixth Affirmative Defense**, Plaintiff failed to mitigate damages.

16.     As for Defendant's **Seventh Affirmative Defense**, the Defendant is not in breach of any duty or obligation, contractual or otherwise to Plaintiff.

17.     As for Defendant's **Eighth Affirmative Defense**, any damages alleged by Plaintiffs, which are denied, were proximately, directly, and solely caused by the acts of a third party .

18.     As for Defendant's **Ninth Affirmative Defense**, any damages claimed by Plaintiff, which are denied, were caused in part or in whole by the faults, actions or omissions of the Plaintiff and, therefore, Defendants are not responsible.

19.     As for Defendant's **Tenth Affirmative Defense**, this Answer is made without any waiver of any jurisdictional defenses.

## COUNTER CLAIMS

### FIRST COUNTERCLAIM:  BREACH OF CONTRACT #1 – CR1088

20. Plaintiff and Defendants started doing business with each other beginning in the year 2000 and continued until the year 2006 because they maintained a good relationship.

21. Plaintiff and Defendants contracted through many methods including emails, verbal agreements and written contracts.

**22.** In or about May 2003, Defendants, brokered a deal between Plaintiff and SWAK, LLC, ("SWAK"), to buy and ship clothing goods to the U.S.. (**See Exhibit 1 – Purchase Order CR1088/also the Contract alleged In Complaint**).

23. In July 2003, Plaintiff was to ship the goods to the U.S., and upon inspection, SWAK would pay Defendants and Plaintiffs via a transferable letter of credit issued through their bank.

24. However, when the goods arrived at the warehouse in New York, SWAK found that 30% of the goods were damaged, and cancelled the transferable letter of credit immediately.

25. Plaintiff sent their CEO and General Manager and Attorney to New York and they also found that the goods were defective.

26. Plaintiff agreed to take full responsibility and pay a repair fee of $50,000, bringing the total balance owed to Plaintiff on Purchase Order CR1088 down to $370,022.87.

27. However, neither a transferable letter of credit nor any secure form of payment was in place at this time.

28. SWAK became insolvent, filed for Chapter 11 Bankruptcy, and did not pay either Plaintiff or Defendants.

29. Had Plaintiff sent conforming goods when the transferable letter of credit was in place, both Plaintiff and Defendants would have been paid in full.

30. Defendants demand $185,831 in damages for lost profit from Purchase Order CR1088 because Plaintiff sent nonconforming goods, resulting in the cancellation of SWAK'S transferable letter of credit and a loss of full payment to Defendants.

## SECOND COUNTERCLAIM: BREACH OF CONTRACT TO ACCEPT DISTRIBUTION FROM SWAK'S BANKRUPTCY

31. In or about the beginning of 2004, Plaintiff's lawyers and its General Manager came from China to meet with Defendants and Defendants' Lawyers in New York to discuss bringing legal action against SWAK to obtain payment for Purchase Order CR1088.

32. Defendants' lawyers informed both Defendants and Plaintiff that SWAK had filed for Chapter 11 Bankruptcy and that a group of creditors had already joined together in a bankruptcy action against SWAK.

33. Plaintiff and Defendants entered into an agreement that Defendants would pay Plaintiff for Purchase Order CR1088 from the distribution amount it received from SWAK'S Chapter 11 Bankruptcy. (EDNY, Case No. 03-26928 DEM).

34. Per the agreement with Plaintiff, Defendants joined the bankruptcy litigation action as creditors of SWAK.

35. Plaintiff and Defendants also agreed to share attorney fees for Defendants joining the SWAK Bankruptcy Litigation.

36. Plaintiff was fully involved the decision making and fully aware of every step of the SWAK Bankruptcy action.

37. Defendants spent three and half years of its time and money to obtain payment from SWAK'S bankruptcy case for Purchase Order CR1088, time and money that was taken away from running its own business.

38. The Bankruptcy Trustee awarded Defendants 32.63% of the total Distribution from SWAK.

39. Defendants paid Plaintiff $120,738.46, which was 32.63% of the total amount outstanding on Purchase Order CR 1088, the contract alleged in the complaint.

40. The total amount outstanding was $370,022.87, which included the reduction in contract price by $50,000 for Plaintiff's initial shipment of defective goods.

41. Defendants made three payments to Plaintiff.

42. On or about 6/24/2004, Defendants paid Plaintiff $30,0000.

43. On or about 1/7/2005, Defendants paid Plaintiff $30,000.

44. On or about 1/12/2007, Defendants paid Plaintiff $22,724.80.

45. The total payment to Plaintiff was for $120,738.46, which was reduced to $82,724.80

because of attorney fees ($18,766.05) and a addendum to the agreement where Plaintiff and Defendants subsequently agreed that Defendants would keep ($19,247.61) for satisfaction of Plaintiff's breach in a different order, Purchase Order CR1242, where Plaintiff, again shipped defective goods.

46.     By filing this action, Plaintiff has breached its agreement with Defendants for full payment of the contract alleged in Plaintiff's complaint, Purchase Order CR1088.

47.     Defendants demand reimbursement of $82,724.80 for the payments it sent to Plaintiff From the disbursements of SWAK'S Bankruptcy Litigation, repayment of $18,767 in attorney fees it incurred for litigating the SWAK Bankruptcy Litigation, and $245,000 for obtaining and updating Plaintiff on the bankruptcy distribution from SWAK that resulted in a loss of significant time and money in its own business.

### THIRD COUNTERCLAIM: BREACH OF CONTRACT #2 – CR1242

48.     On or about October 18, 2005, Defendants contracted (Purchase Order CR1242) with Plaintiff to buy goods for a Manufacturer and have them shipped to New York.  (**SEE EXHIBIT #2 – Purchase Order CR1242**).  Plaintiff shipped defective goods that the Manufacturer rejected and caused Defendants to lose $51,822 in profit.

49.     Defendant's seek to recover $51,822 in actual damages.

### FOURTH COUNTERCLAIM:
### TORTIOUS INTEFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONS

50.     As a result of Plaintiff's defective shipments for Purchase Order CR1242, as

7

mentioned in Paragraph #48 above, Defendants lost a huge volume of business from that customer manufacturer. In 2004, the Customer from Purchase Order CR1242 was responsible for $512,000 in revenue to Defendant and in 2005 the revenue increased to $1.8 million. However, after Plaintiff's breach, the Customer from Purchase Order CR1242 reduced its business with the Defendants. Defendants only received revenue in the amounts of $36,516 in 2006 and $180,000 in 2007.

51.     Plaintiff has repeatedly shipped nonconforming goods when contracting with Defendants, as mentioned in Paragraphs 48-53 above, resulting in both a loss of revenue and business relations for Defendants.

52.     Plaintiff's initial breach of contract in Purchase Order CR1088 (the contract alleged in the complaint) caused SWAK to reject the goods and cancel the transferable letter of credit, which subsequently resulted in Defendants not being paid full contract price.

53.     Plaintiff's second breach of contract in Purchase Order CR1242 as mentioned in Paragraphs 48-49 above resulted in a loss of volume business for Defendants.

54.     In or about May-June 2003, Defendants brokered contracts between Plaintiff and two different buyers to ship goods to the U.S. under Purchase Orders CR1083 and CR1086.

55.     The buyers rejected the goods because the shipments were defective.

56.     As a result of Plaintiff's breach in the contracts, the buyers declined to do business with Defendants ever again.

57.     Defendants seek to recover $185,831 from the loss of profit in Purchase Order

CR1088 (the contract alleged in the complaint), $51,822 from the loss of profit in Purchase Order CR1242, and $700,000 in damages for loss of business relations with the Customer from Purchase Order CR1242 and the loss of business from the Customers in Purchase Orders CR1083 and CR 1086.

### FIFTH COUNTERCLAIM: FRIVOLOUS SUIT

58.     Plaintiff has filed a frivolous and merit-less suit against defendants, in light of the Settlement and Payment as aforementioned in Paragraphs 31-47, above.

59.     Plaintiff's conduct in filing this action should be sanctioned by the Court pursuant to FRCP 11(b).

57.     Plaintiff's actions in filing an additional suit against Defendants, after Plaintiffs and Defendants agreed to be paid from SWAK'S Bankruptcy distribution, has caused unwarranted interference with Defendants business operations.

58.     Defendants request the Court hold plaintiff and plaintiff's counsel responsible for defendants' legal fees and costs in defending this frivolous suit.

59.     Defendants also requests the Court fine the plaintiff a monetary sum sufficient to deter such conduct from occurring in the future.

60.     Defendants also request the Court issue an order barring plaintiff from filing any additional and/or further litigation, or claims, based upon this matter, without prior authorization and permission of the Court, so the defendants may finally have finality regarding this matter.

9

**WHEREFORE**, Defendants demand judgment:

- a) Dismiss the Complaint against Defendants.

- b) Damages in the amount of $185,831 to be awarded to Defendants for Plaintiff's breach of contract for Purchase Order CR1088.

- c) Damages in the amount of $245,000 for Defendants loss of time and money spent obtaining the distribution payment from insolvent buyer of Purchase Order CR1088.

- d) Damages in the Amount of $18,766.05 for Attorney Fees in litigating SWAK, LLC Bankruptcy.

- e) Damages in the amount of $51,822 to be awarded to Defendants for Plaintiff's breach of contract for Purchase Order CR1242.

- f) Damages in the amount of $700,000 to be awarded to Defendants because Plaintiff cost Defendants valuable customer revenue and loss of business relations from Purchase Order CR 1242 and loss of customers from Purchase Orders CR 1083 and CR1086.

- g) An order barring plaintiff from filing any additional and/or further litigation, or claims, based upon this matter, without prior authorization and permission of the Court.

- h) The Court fine the plaintiff a monetary sum sufficient to deter such conduct from occurring in the future.

- i) The Court hold responsible plaintiff and/or plaintiff's counsel for this frivolous action and award Defendant's their Attorney Fees, Legal expenses, and any and all costs incurred in defending this action.

- j) Such other, compensatory, consequential, and punitive damages; and any additional and further relief as the Court may deem to be just and proper in the circumstances of this case.

Dated: July 3, 2008
    New York, New York

                                      Respectfully Submitted:
                                      Wong Wong & Associates, P.C.
                                      *Attorneys for the Defendants*

                                  By: /s/ Anna Guiliano_____
                                    Anna Guiliano (AG0395)
                                    Wong Wong & Associates, P.C.
                                    150 Broadway, Suite 1588
                                    New York, New York 10038
                                    T: (212) 566-8080
                                    F: (212) 566-8960

# Exhibit 1

# 辽宁成大实业有限公司
## LIAONING CHENGDA ENTERPRISES CO., LTD

NO. 30 EAST CHONGSHAN ROAD
YUHONG DIST. SHENYANG P.C:110032
TEL:(86)24-86902965 86901585
FAX:(86)24-86902955
E-mail:chnlncd@mail.sy.ln.cn

电报挂号
TELEGRAPHIC ADDRESS:

# 售货确认书
## SALES CONFIRMATION

编号 NO. cdsy2003-1028t
日期 DATE 2003-5-11

客户 CHINARED USA
TO M/S: 150 7TH AVE., SUITE 988 NEW, NY10123

地点 SIGNED AT. SHENYANG
传真号码 FAX NO. (86)24-86902955

下列签字双方同意按以下条款达成交易
The under signed Sellers and Buyers have agreed to close the following transactions according to the terms and conditions stipulated below:

| 品名、规格及内容 COMMODITY, SPECIFICATION & CONTENTS | 数量 QUANTITY | 价格及条款 UNIT PRICE & TERMS | 金额 AMOUNT |
|---|---|---|---|
| GIRLS 100%ACRYLIC SWEATER STYLE: 75316 PO: 23267 | 10,252DZ | FOB USD40.20/DZ | USD412,130.40 |
| TOTAL: | 10,252DZ | TOTAL: | USD412,130.40 |

总值: SAY FOR HUNDRED AND TWELVE THOUSAND ONE HUNDRED AND THIRTY DOLLARS AND FORTY CENTS
TOTAL VALUE:

装运期限 SHIPMENT: Jul.10,2003

付款方式 L/C AT SIGHT

买方应在装运月份开始30天以前, 开出以买方为受益人的不可撤销的信用证, 信用证在装运15天后在中国到期.

保险: 1. FOB, CFR由买方保险.
2. CIF由卖方按照发票金额的110%投保全险和战争险.

服务条款 1. 该货物不得转口到与中国签订双边纺织品贸易协定的国家.

2. 买方对下列各列各点所造的后果承担全部责任: (A) 使用买方指定的商标、装璜、花型图案等; (B) 不及时提供生产所必需规格或其它细则; (C) 不按时开信用证; (D) 信用证条款与售货确认书不符而不及时修改.

3. 质地、重量、尺寸、花型、颜色均允许合理差异. 允许转运和分批装运.

4. 人力不可抗拒的事故造成延期或无法交货者, 卖方不负任何责任.

5. 凡有对装运的货物质量提出索赔者, 必须在货到目的港后30天内提出.

目的地 FROM CHINA TO: LOS ANGELES
PAYMENT: L/C AT SIGHT
By 100% confirmed & irrevocable L/C in favour of the Seller against sight drafts and full set of shipping documents reaching the Seller 30 days before the month of shipment remaining valid for negotiation in China for further 15 days ... the shipment date.

CE: 1. FOB, CFR to be effected by the buyer
2. CIF to be effected by the sellers at 110% of invoice val. covering all risks and war risk as per China Insurance Clauses. (C. I. C)

GENERAL TERMS:
1. All above goods should not be transferred to the country which has bilateral textiles agreement with China.
2. Buyers are to assume full responsibilities for any consequences arising from: (A) the use of TRADE MARK, packing, designs or pattern made of order. (B) late submission of specification; (C) late establishment of L/C; (D) late amendment to L/C inconsistent with the provisions of this Sales Confirmation.
3. Reasonable tolerance in quality, weight, measurements, designs and colours is allowed, Allowing transhipment and partial shipment.
4. Sellers are not responsible for late or nondelivery in the event of force majeure or any contingencies beyond Sellers' control.
5. Claims, if any, concerning the goods shipped should be filed within 30 days after arrival at destination.

买方 (The Buyers)

请在本合同签字后寄回一份
Please sign and return one

卖方 (The Sellers)

# Exhibit 2

| NO. | CDSY05-1024C | LIAONING CHENGDA ENTERPRISES CO., LTD | NO. 36 SHIYI WEI ROAD HEPING DIST. SHENYANG, CHINA |
|---|---|---|---|
| DATE: | OCT. 18, 2005 | 售货确认书 | TEL: 0086-24-62218889 |
| SIGNED AT: | SHENYANG | SALES CONFIRMATION | FAX: 0086-24-62250795 |
|  |  |  | E-mail: |

CR1242

客户: CHINARED USA
TO M/S: 上海市长宁区宣化路299弄富都花园2号15楼C座

下列签字双方同意按以下条款达成交易
The under signed Sellers and Buyers have agreed to close the following transactions according to the terms and conditions stipulated below:

| 品名、规格及内容<br>COMMODITY、SPECIFICATION & CONTENTS | 数量<br>QUANTITY<br>DOZS | 价格及条款<br>UNIT PRICE & TERMS<br>FOB CHINA<br>US$ /DOZ | 金额<br>AMOUNT<br>US$ |
|---|---|---|---|
| 0027C  LADIES' 55%RAMIE 45%COTTON KNITTED SWEATER W/COTTON TANK | 2908 | 57.50 | 167,210.00 |
|  TOTAL: | 2908 | TOTAL: | 167,210.00 |

$167,210

PO CR1242

总值: SAY: U.S. DOLLARS ONE HUNDRED SIXTY SEVEN THOUSAND TWO HUNDRED AND TEN ONLY.
TOTAL VALUE:

装运期限: OCT. 14, 2005          目的地: NEWYORK
                                  FROM CHINA TO:

付款方式: L/C                     PAYMENT: L/C

卖方应在装运月份开始30天以前, 开出以卖方为受益人的保兑的不可撤销的信用证, 信用证于装运15天后在中国到期。

By 100% confirmed & irrevocable L/C in favour of the Seller against sight drafts and full set of shipping documents reaching the Seller 30 days before the month of shipment remaining valid for negotiation in China for further 15 days after the shipment date.

保险:                             INSURANCE:
1. FOB、CFR由买方保险。           1. FOB, CFR to be effected by the buyer
2. CIF由卖方按照发票金额的110%投保全险和战争险。   2. CIF to be effected by the sellers at 110% of invoice value covering all risks and war risk as per China Insurance Clauses. (C.I.C)

一般条款:                         GENERAL TERMS:
1. 该货物不得转口到与中国签订双边纺织品贸易协定的国家。   1. All above goods should not be transferred to the country which has bilateral textiles agreement with China.
2. 买方对下列各列各点所造的后果承担全部责任: (A) 使用买方特定的商标、装潢、花型图案等; (B) 不及时提供生产所必需规格或其它细则; (C) 不按时开信用证; (D) 信用证条款与售货确认书不符而不及时修改。   2. Buyers are to assume full responsibilities for any consequences arising from:(A)the use of TRADE MARK, packing, designs or pattern made of order.(B)late submission of specification;(C)late establishment of L/C;(D)late amendment to L/C inconsistent with the provisions of this Sales Confirmation.
3. 质地、重量、尺寸、花型、颜色均允许合理差异, 允许转运和分批装运。   3. Reasonable tolerance in quality, weight, measurements, designs and colours is allowed, Allowing transhipment and partial shipment.
4. 人力不可抗拒的事故造成延期或无法交货者, 卖方不负任何责任。   4. Sellers are not responsible for late or nondelivery in the event of force majeure or any contingencies beyond Sellers' control.
5. 凡有对装运的货物质量提出索赔者, 必须在货到目的港后30天内提出。   5. Claims, if any, concerning the goods shipped should be filed within 30 days after arrival at destination port.

                                  For and on behalf of
买方 (The Buyers)                 请在本合同签字后寄回一份   辽宁诚大实业有限公司
                                  Please sign and return one  LIAONING CHENGDA ENTERPRISES CO.,LTD

ChinaRed USA